## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| TRANSCONTINENTAL GAS PIPE LINE COMPANY, LLC, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 18-CV-0445-CVE-FHM |
| KIBBY WELDING, LLC, | ) ) | |
| Defendant. | ) ) | |

## OPINION AND ORDER

Before the Court are the following motions: Plaintiff Transcontinental Gas Pipe Line Company, LLC's Renewed Motion to Strike Defendant's Jury Demand and Brief in Support (Dkt. # 69); Plaintiff's Motion for Summary Judgment and Brief in Support (Dkt. ## 70, 81); Plaintiff's First Motion in Limine (Dkt. # 83); Plaintiff's Second Motion in Limine (Dkt. # 84); Plaintiff's Third Motion in Limine (Dkt. # 85); Plaintiff's Fourth Motion in Limine (Dkt. # 86); and Plaintiff's Fifth Motion in Limine (Dkt. # 87).   Plaintiff Transcontinental Gas Pipe Line Company, LLC (Transco) requests summary judgment in its favor on all of its claims and as to defendant Kibby Welding, LLC's (Kibby) counterclaims of breach of contract and interference with business relations.   Dkt. ## 70, 81.   Transco also asks the Court to strike Kibby's demand for a jury trial, because the parties waived their right to a jury trial in their contract.   Dkt. # 69.

### I.

Transco is an interstate pipeline company and it solicited bids for a project identified as Spread 16.   Transco states that it is a subsidiary of Williams Partners Operating, LLC, and The Williams Companies, Inc. (collectively Williams).   Dkt. # 25, at 2.   On November 30, 2017, Transco

held a pre-job meeting for contractors to inspect the work site in Charlottesville, Virginia, and Louis Kibby, the owner of Kibby, attended the meeting.[1]  Dkt. # 70-2.  Kibby submitted a lump sum bid of $4,058,500  for the Spread 16 project, and the bid stated that Kibby had applied for a Virginia contractor's license.  Dkt. # 71-4, at 1.  However, Kibby did not actually apply for a Virginia contractor's license until February 14, 2018, and Kibby did not obtain a Virginia contractor's license until April 11, 2018.  Dkt. # 70-5, at 2; Dkt. # 71-5.  On January 5, 2018, Transco accepted Kibby's bid for the project after the parties exchanged e-mails clarifying certain matters relating to the contract.  Dkt. # 71-6.  Louis Kibby signed the contract with Transco after reviewing the scope of work provisions of the contract, and he admits that he did not attempt to read the entire contract. Dkt. # 71-7, at 3-4.

The contract required Kibby to obtain a performance and payment bond before beginning work on the project.  Specifically, the contract provides:

> At [Transco's] request, Contractor shall furnish, prior to commencement of the Work to be performed, a performance and payment bond in the amount of the total Contract compensation.  Such bond shall be on a form satisfactory to Company for guaranteeing that Contractor will fully perform its obligations and assume its liability under this Contract. . . . Failure to furnish and maintain a requested performance and payment bond shall be considered a breach of the Contract.

Dkt. # 71-1, at 29-30.  The parties do not dispute that Transco requested that Kibby obtain a bond before beginning work on the project.  Dkt. # 70-7, at 7; Dkt. # 70-8, at 1.  On January 17, 2018, Transco asked for an update on the bond, and Louis Kibby responded that he should "have it today or tomorrow."  Dkt. # 70-8, at 9.  By April 2018, Kibby had still not obtained a bond and Transco was still requesting a bond for the full amount of the contract.  Id. at 16.  Kibby affirmatively advised

---

[1]      Throughout this Opinion and Order, the Court will refer to the business entity Kibby Welding, LLC as "Kibby" and will refer to Louis Kibby by name.

Transco that "we did get a bond for this job" but, in fact, Louis Kibby admitted that Kibby had not obtained a bond.  Id. at 16.  Louis Kibby also told Transco that the bonding company would no longer issue a bond for the full amount of the contract due to the completion of some of the work, and he asked if Transco would accept a bond for a reduced amount.  Id.  Transco clearly advised Kibby that this would not be acceptable.  Id.  Louis Kibby has submitted an affidavit stating that Kibby had a "firm quote" for a bond no later than January 19, 2018, and he provided this information to Transco.  Louis Kibby claims that Transco allowed work to start on the project without a bond. Dkt. # 93-1, at 2.  However, he offers no explanation for Kibby's failure to actually obtain the bond as repeatedly requested by Transco.

Work was scheduled to begin on the Spread 16 project near the end of January 2018 and there is no dispute that the work was delayed, but the parties dispute the cause for Kibby's delay in beginning work on the project.  Transco's expert, FTI Consulting, Inc. (FTI), states that Kibby did not submit an extra work request (EWR) for a delayed start of trenching work, and there is no evidence suggesting that Transco was responsible for a 21-day delay of work at the beginning of the project.  Dkt. # 70-9, at 29.  The delay in beginning excavation work led to subsequent delays of planned pipeline outages that further delayed completion of the project.  Id. at 30.  Kibby responds that it was mobilized and ready to work on January 29, 2018, and Transco's delay in providing necessary materials to Kibby caused a delay in welding and pre-fabrication of the necessary valves and pipeline parts.  Dkt. # 93-1, at 2.  Kibby also claims that it discovered a bend in the pipeline that was not disclosed in the drawings provided by Transco, and Transco's delay in providing revisions to the scope of work further delayed work on the project.  Id.  By March 2018, Transco had become concerned about delays in completion of Kibby's work, and Transco's project manager, Mark

Wachowicz, reported that Kibby had significant turnover in its workforce and it was not field-verifying underground pipe configurations before pre-fabricating the valve assemblies.  Dkt. # 94-3, at 1.  In April 2018, Transco deleted 18 items from the scope of work included in the contract due to Kibby's delays in completing work, but Kibby objected to the deletion of these items and it claims that the reduction of the scope of work actually increased the cost for Kibby to complete its work. Dkt. # 70-11; Dkt. # 93-1, at 3.  In June and July 2018, further delay resulted when Kibby was unable to complete the tie-in welds for the Mainline B Pipe Replacement, but the parties again dispute the cause of the delay.  FTI determined that delays in the pipe replacement were due to poor welds by Kibby that had to be repaired, cut out, or repeated, and Kibby's poor work resulted in additional outages and 23 days of delay in completion of the work.  Dkt. # 70-9, at 34-39.  Louis Kibby states that Transco personnel assumed authority over the welds for the Mainline B Pipe Replacement, and the welds failed after Transco failed to follow the welding procedures recommended by Kibby.  Dkt. # 93-1, at 3.

The contract provided that the entire scope of work was intended to be completed in 145 days, but Kibby had completed only a reduced portion of the scope of work after 197 days.  Dkt. # 70-9, at 34.  The contract provided a process for additions or changes to the contract based on unforeseen events or delays as follows:

> Contractor shall make no additions, changes, alterations or omissions, perform extra work, or supply or use extra materials or equipment of any kind except in accordance with a prior approved "Extra Work Request" [EWR] in the form attached as Appendix C, or a written amendment to the Contract.

Dkt. # 71-1, at 13.  Kibby was required to submit EWRs to Transco at least 48 hours before starting any work that would require compensation that was not specifically authorized by the contract.  Id.

Louis Kibby states that Transco personnel directed Kibby not to use the EWR process before proceeding with work outside the scope of the project, and he claims that Transco wanted Kibby to submit EWRs directly to the project manager for approval.  Dkt. # 93-1, at 4-5.  The evidence submitted by Kibby does not fully support Louis Kibby's claim concerning an alleged waiver of the EWR process.  Transco did send Kibby an e-mail directing Kibby to submit EWRs to the project manager, but the e-mail specifically states that Kibby should wait for an answer from the project manager before beginning any work outside the scope of the contract. Dkt. # 93-22.  The parties do not dispute that Kibby submitted 86 EWRs for compensation in the total amount of $4,794,346 in addition to the original contract price.  Dkt. # 70, at 11; Dkt. # 94, at 15.

In July 2018, Transco began to receive notices that Kibby's subcontractors were filing liens on Transco's property due to non-payment for work performed on the Spread 16 project.  Dkt. # 70-16.  On July 25, 2018, Kibby's equipment lease company, United Rental, reclaimed the equipment being used by Kibby, and Kibby had an outstanding balance of over $500,000 with United Rental. Dkt. # 79-2. On August 7, 2018, Kibby's work on the Spread 16 project had not been completed and Transco sent Kibby notice of intent to terminate the contract.  Dkt. # 70-17.  The notice lists three bases for termination of the contract:

- Kibby neglected to provide a Payment and Performance Bond in connection with the "Work" as required by Transco pursuant to Article 28 of the Contract and as requested in writing by Transco on January 8 and January 12, 2018 and;

- Kibby failed to keep the Work and project free and clear of liens as required by Article 25 and as such failed to comply with the requirements of the Contract (refer to Exhibit 1 of this notice) and;

> •     Kibby failed to achieve completion of the Work in accordance with the Key Milestone Performance Dates (outages and completion) agreed to and set forth in Article 5 of Section IX of the Contract.

Id. at 1. Kibby sent a written response to Transco contesting each of the bases for termination of the contract, but Transco formally terminated the contract on August 13, 2018. Dkt. # 94-14. Following termination of the contract, Kibby filed seven liens against the Spread 16 project. The contract provides that:

> To the extent of payments made by company, Contractor releases and shall defend (at Company's option), indemnify and hold harmless Company Group from and against all claims for services, labor and materials furnished by or through Contractor or its subcontracts under this Contract, and from and against all laborers', materialmen's and mechanics' liens levied or attached to any property that arise out of any services, labor or materials furnished by or through Contractor or its subcontractors under this Contract. Contractor shall keep the property and Work free and clear of all liens, claims, security interests and encumbrances arising from the performance of the Work and this Contract.

Dkt. # 71-1, at 27. Transco has demanded that Kibby defend it in lien enforcement actions filed by subcontractors, but Kibby has refused to defend Transco. Dkt. # 70-5, at 6; Dkt. # 70-18.

The contract permitted Transco to recover reprocurement costs from Kibby in the event that the contract was terminated and Transco was required to obtain another contractor to complete the work. Dkt. # 71-1, at 28-29. Transco retained $357,961 that was payable to Kibby for final acceptance of the work, and Transco also withheld $104,085 for progress payment eleven and $204,390 in negotiated EWR payments. Dkt. # 70-9, at 44-46. Transco paid an additional $933,157 to complete the contract work, and this exceeds the amount owed to Kibby upon termination of the contract. Id. at 46. After termination of the contract, Kibby's subcontractors began to contact Transco directly to demand payment and arrange for the recovery of material and equipment left on

the job site.  Dkt. # 70-27.  The e-mails do not contain any statements by Transco in which they discourage any person or entity from conducting business with Kibby in the future.

Transco filed this case alleging claims of breach of contract as to completion of the work (count I), breach of contract and release of liens (count II), indemnification and demand for defense (count III), declaratory relief as to Kibby's liens (count IV), and accounting (count V).  Dkt. # 22. Kibby filed counterclaims for breach of contract (first cause of action), fraud (second cause of action), unjust enrichment (third cause of action), and interference with business relationships (fourth cause of action).  Transco filed a motion to dismiss Kibby's counterclaims for fraud and unjust enrichment, and Transco also sought to enforce a contractual waiver of Kibby's right to demand a jury trial.  Dkt. ## 26, 27.  Kibby filed a motion to amend its counterclaims in light of the arguments made in Transco's motion to dismiss.  The Court granted the motion to dismiss, and Kibby's counterclaims for fraud and unjust enrichment were dismissed.  Dkt. # 37.  The Court found that the record was insufficient to establish that Kibby knowingly and voluntarily waived its right to a jury trial, and the Court also denied Kibby's motion to file amended counterclaims.

## II.

Summary judgment pursuant to Fed. R. Civ. P. 56 is appropriate where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Kendall v. Watkins, 998 F.2d 848, 850 (10th Cir. 1993).  The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

7

<u>Celotex</u>, 477 U.S. at 317.  "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'"  <u>Id.</u> at 327.

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"  <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586-87 (1986) (citations omitted).  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff."  <u>Anderson</u>, 477 U.S. at 252.  In essence, the inquiry for the Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  <u>Id.</u> at 250.  In its review, the Court construes the record in the light most favorable to the party opposing summary judgment.  <u>Garratt v. Walker</u>, 164 F.3d 1249, 1251 (10th Cir. 1998).

## III.

Transco seeks summary judgment in its favor on all of its claims and against Kibby, and as to the remaining counterclaims for breach of contract and interference with business relationships.  Dkt. ## 70, 81.  Transco argues that Kibby breached the contract by failing to complete the work, by failing to obtain a bond, and by failing to keep the project free and clear of liens.  Transco asks the Court to order Kibby to indemnify Transco for all costs it has incurred to defend against liens filed by subcontractors, and Transco requests that the Court order that Kibby release and discharge its liens against Transco.

**A.**

Transco argues that it is entitled to summary judgment on its breach of contract claims (counts I and II).  Kibby responds that Transco waived the contractual requirement to obtain a bond, because Transco permitted Kibby to begin work on the Spread 16 project without providing a bond. Dkt. # 94, at 21.  Kibby claims that its failure to complete the work on the schedule contained in the contract was caused by Transco, because Transco failed to disclose bends in the pipeline during contract negotiations and Transco failed to timely provide materials to Kibby.  Id. at 8.  Kibby also argues that it has no obligation to defend Transco against liens filed by subcontractors or release its own liens against Transco, because Transco failed to pay all of the EWRs submitted by Transco and Transco's failure to pay caused Kibby to be unable pay its subcontractors.  Id. at 24.

**Failure to Obtain a Bond**

Transco claims that Kibby breached the contract by failing to obtain a performance and payment bond as required by the contract.  The contract states that at "[Transco's] request, Contractor shall furnish, prior to commencement of the Work to be performed, a performance and payment bond in the amount of the total Contract compensation." Dkt. # 71-1, at 29-30.  The parties agree that Kibby did not obtain a performance and payment bond at any point during work on the Spread 16 project. However, Kibby argues that Transco waived the contractual requirement to obtain a bond, because Transco did not enforce this requirement "prior to commencement of the Work to be performed." Dkt. # 94, at 20.

Under Oklahoma law, "[a] breach of contract is a material failure of performance of a duty arising under or imposed by agreement." Lewis v. Farmers Ins. Co., 681 P.2d 67, 69 (Okla. 1983). The three elements of a breach of contract claim are "1) formation of a contract; 2) breach of the

9

contract; and 3) damages as a direct result of the breach." Digital Design Grp., Inc. v. Info. Builders, Inc., 24 P.3d 834, 843 (Okla. 2001). Under Oklahoma law, a party may waive performance of a contractual requirement in some instances, but the waiver must be an "intentional relinquishment of a known right." Robberson Steel Co. v. Harrell, 177 F.2d 12, 15 (Okla. 1949). "Where by the course of conduct of one party to a contract, entitled to the performance of certain terms or conditions thereof, the other party has been led to believe, as a man of average intelligence, that such performance will not be required, until it has become too late to perform, or until to insist upon performance would work material injustice, the person who has so conducted himself is barred from asserting the right he had." Campbell v. Frye, 292 P. 7, 9 (Okla. 1930). A necessary component of a waiver of a contractual right is that the party making the waiver had "full information of the material facts." Whitmire v. Zolbe, 403 P.2d 445, 448 (Okla. 1965).

The evidence is clear that Kibby breached the contract by failing to obtain a bond, and Kibby has not shown that Transco waived this contractual requirement. Before commencement of the work, Transco sent an e-mail to Louis Kibby asking to see Kibby's bond for the Spread 16 project, and Louis Kibby responded that "we will get a price to you as soon as possible." Dkt. # 70-8, at 1. On January 17, 2018, Transco requested an update on the bond, and Louis Kibby responded that he would have the bond "today or tomorrow." Id. at 9. Transco inquired about the status of the bond on January 18, 2018, and Louis Kibby asked if he could fax the bond information to Transco. Id. at 11. By April 2018, Transco was still asking for the bond and Kibby falsely represented that it had obtained a bond. Id. at 16. Louis Kibby testified at his deposition that Transco specifically requested that Kibby obtain a bond and that he understood that Transco expected Kibby to get a bond after Kibby started work. Dkt. # 70-7, at 7. This evidence shows that Transco clearly invoked the

requirement to obtain a bond before and after work began on the Spread 16 project, and Kibby repeatedly represented that a bond would be forthcoming. A person of ordinary intelligence would not have been misled by Transco that it was waiving the bond requirement and, in fact, the evidence clearly shows that Kibby knew it was expected to obtain a bond. The Court rejects Kibby's argument that Transco waived the contractual requirement to obtain a bond, and finds that Transco is entitled to summary judgment on its breach of contract claim on this theory.

**Completion of the Work on Schedule**

Transco argues that Kibby failed to comply with the key performance dates agreed to in the contract, and Transco incurred damages as a result of Kibby's delay in performing the work. Kibby responds that Transco caused any delays in completion of the work, and there are genuine disputes of material facts that preclude summary judgment on this issue. The Court agrees with Kibby that there are genuine disputes of material fact concerning the cause any delay in the completing the Spread 16 project. Transco's expert witnesses explain that the work was intended to begin on January 28, 2018 and end on June 9, 2018, but the work was unfinished when Transco ultimately terminated the contract in August 2018. Dkt. # 70-9, at 17-18. Transco's experts note that Kibby filed 86 EWRs and this could be an indication that the work was taking longer than expected, but only seven of the EWRs actually state that the extra work had any effect on the schedule. Id. at 23-24. The experts reviewed the evidence related to delays in completing the work and opine that there is no evidence that Transco could be faulted for the delays. Id. at 29-40. Louis Kibby states that Kibby was on the job and ready to work on January 29, 2018, but Kibby could not begin working until February 7, 2018 due to Transco's failure to supply the necessary materials. Dkt. # 93-1, at 2. He further claims that technical drawings supplied by Transco during the bidding process were

inaccurate, and Transco waited over two weeks before responding to Kibby's request for instructions concerning an unexpected bend in the pipeline. Id. As to the Mainline B Pipe Replacement, Louis Kibby states that Transco personnel took over and used their own welders, and the welds failed as a result of Transco's failure to follow proper welding procedures. Id. at 3. The Court cannot weigh the testimony or make credibility determinations when ruling on a motion for summary judgment, and the parties have offered conflicting evidence as to the cause of Kibby's delay in completing the work on time. The Court finds that Transco's motion for summary judgment should be denied on this issue. Based on the same evidence, the Court also finds that summary judgment is inappropriate on Kibby's breach of contract counterclaim, because there are genuine disputes of material fact concerning the need for the additional work performed by Kibby and whether Transco was obligated to pay Kibby for any of the extra work.

**Kibby's Failure to Keep Property Clear of Liens**

Transco argues that the contract required Kibby to keep the Spread 16 project free and clear of liens. Transco claims that Kibby not only failed to keep the property free and clear of liens filed by subcontractors, but also filed its own liens against Transco in violation of the contract. Dkt. # 70, at 20-21. Kibby responds that the liens filed by subcontractors and Kibby were caused by Transco's failure to pay the EWRs submitted by Kibby, and the lien waiver provision is unenforceable due to Transco's failure to pay the full amount demanded by Kibby.[2] Dkt. # 94, at 24.

The Court finds that Kibby has clearly breached the contract by filing liens against Transco. The contract provides that:

---

[2]     The Court will consider Kibby's alleged breach of the contract as it relates to liens filed by subcontractors in the context of Transco's claim for indemnification for costs incurred to defend against the subcontractor's liens.

> To the extent of payments made by company, Contractor releases and shall defend (at Company's option), indemnify and hold harmless Company Group from and against all claims for services, labor and materials furnished by or through Contractor or its subcontracts under this Contract, and from and against all laborers', materialmen's and mechanics' liens levied or attached to any property that arise out of any services, labor or materials furnished by or through Contractor or its subcontractors under this Contract. Contractor shall keep the property and Work free and clear of all liens, claims, security interests and encumbrances arising from the performance of the Work and this Contract.

Dkt. # 71-1, at 27.  The Tenth Circuit, applying New Mexico law, has found that a lien waiver provision can be enforced unless the state has a public policy or express antiwaiver statute prohibiting the enforcement of such provisions.  MidAmerica Construction Management, Inc. v. MasTec North America, Inc., 436 F.3d 1257 (10th Cir. 2006).  The parties have not identified any Oklahoma statute or judicial decision that would prevent the enforcement of a lien waiver provision or that shows that Oklahoma has a public policy against such provisions.  Kibby argues that Oklahoma law forbids enforcement of a lien waiver provision when the party seeking to enforce the waiver has not fully paid under the contract. Dkt. # 94, at 24.  However, the cases cited by Kibby are not on point and have no application to the dispute between Transco and Kibby.  See Antrim Lumber Co. v. Neal, 44 P.2d 939 (Okla. 1935) (land owner may enforce lien waiver upon payment of contract price); Eason Oil Co. v. M.A. Swatek Co., 36 P.2d 504 (Okla. 1934) (lien waiver obtained by a general contractor from a subcontractor could not be enforced by the land owner when the land owner knew the subcontractor had not been paid).  The parties do not dispute that Transco has paid Kibby $3,221,650 for its work up to the time of termination of the contract, and this was the amount agreed upon under the parties' contract for the work that had been performed up to the time of termination.  Dkt. # 70-9, at 44.  Kibby also admits that its liens against Transco are duplicative of the liens filed by subcontractors, and it filed the liens to collect amounts it owes to

subcontractors.  Dkt. # 70, at 13; Dkt. # 94, at 17.  Kibby agreed to keep the Transco's property free and clear of liens and, at its most basic level, this provision of the contract prevents Kibby from filing liens against the Spread 16 project.  Kibby has an alternative and better remedy to recover any amounts that it believes it is owed under the contract in the form of its breach of contract counterclaim, and its duplicative liens will only delay resolution of the parties' dispute.  The Court finds that Kibby has breached the contract by filing liens against the Spread 16 project.[3]

### B.

Transco argues that Kibby has a duty to indemnify Transco for costs incurred to defend against lien foreclosure actions filed by subcontractors in Virginia.   Dkt. # 70, at 24. Transco also argues that it is entitled to summary judgment on its claim for an accounting, because the parties' contract expressly provides Transco access to the records of Kibby relating to the contract.  Kibby responds that it is obligated to indemnify Transco against subcontractor's liens only to the "extent of payment made by [Transco]," and Kibby claims that it has already produced relevant documents to Transco during pretrial discovery.  Dkt. # 94, at 25, 27.

The parties do not dispute that the contract requires Kibby to indemnify and defend Transco against liens filed by subcontractors, but Kibby argues that this applies only "to the extent of payments made by [Transco]."  Dkt. # 94, at 25.  Kibby argues that Transco has not fully paid under the contract and it cannot force Kibby to defend Transco against the subcontractor's liens.  Kibby's argument does not show that the defense and indemnification provision is inapplicable in this case.

---

[3]      Kibby also argues that Transco has not incurred damages as a result of the liens filed by Kibby, but neither party has offered evidence on this issue.  Dkt. # 94, at 25-26.  The Court will consider the issue of damages at trial, but the record is clearly insufficient for the Court to preliminarily determine that Transco will be unable to recover damages due to Kibby's decision to file liens against the Spread 16 project.

The provision does not state that full payment of all disputed amounts of the contract must be paid before Kibby is obligated to defend and indemnify Transco.  Instead, as Kibby notes, the defense and indemnification is triggered "to the extent" of Transco's payments to Kibby.  Dkt. # 71-1, at 27.  The evidence is undisputed that Transco paid Kibby over $3.2 million at the time of termination of the contract, and the liens filed against the Spread 16 project by subcontractors total $2,894599.  Dkt. # 70, at 13; Dkt. # 70-9, at 45.   The payments by Transco represent full payment up to the time of termination of contract based on the agreed-upon price for the work. The subcontractors who have filed liens against the project are Garnet Wood Products Co., Inc., United Rentals, and Badger Daylighting Corp.  Dkt. # 70-16.  Kibby's bid for the Spread 16 project shows that it included amounts for the work of these subcontractors, and Transco's payments to Kibby included amounts for the work of these subcontractors.  Dkt. # 71-4.  As required by the contract, Transco demanded that Kibby defend Transco against the subcontractors' liens and Kibby has refused.  Dkt. # 70-5, at 6; Dkt. # 70-18.  The Court finds that Kibby is obligated to defend and indemnify Transco against the liens filed by subcontractors, and Kibby has breached the contract by failing to provide a defense to Transco.[4]

## C.

Transco argues that Kibby cannot come forward with evidence to establish a <u>prima facie</u> case of tortious interference with business relationships under Oklahoma law, because Transco did not

---

[4]     As to Transco's accounting claim, the Court finds that it would be premature to order an accounting based on the summary judgment record.  Should Kibby prevail on its breach of contract counterclaim, Transco will likely be entitled to conduct an accounting to determine if damages should be offset or mitigated due to Kibby's alleged misuse of the contract funds, but Transco has not shown that the accounting is necessary to resolve Transco's breach of contract claim or Kibby's breach of contract counterclaim.

interfere with a business relationship and any communications made by Transco to Kibby's subcontractors were not made with malicious or wrongful intent.  Kibby argues that it has subsequently submitted bids for contracts offered by Williams, and Kibby has not been awarded contracts.  Kibby also claims that it has been unable to use certain subcontractors who have not been paid from the Spread 16 project, and that Kibby's reputation has been damaged as a result of Transco's claims that Kibby failed to satisfactorily perform the work on the project.  Dkt. # 94, at 19.

To establish a claim for tortious or malicious interference with a business relationship, Kibby must prove the following elements: "1) interference with a business or contractual right; 2) malicious and wrongful interference that is neither justified, privileged, nor excusable; and 3) damages proximately sustained as a result of the interference."  Tuffy's, Inc. v. City of Oklahoma City, 212 P.3d 1158, 1165 (Okla. 2009).  Oklahoma courts define "interference" as discouraging a third party from entering into a business relationship or intentionally acting to interfere with a person's business relationship or expectancy, and the intentional interference element of the claim requires a finding of bad faith on the part of the interferor.  Loven v. Church Mut. Ins. Co., 452 P.3d 418, 426 (Okla. 2019).   A tortious interference claim cannot be asserted against a person who was a party to the contractual or business relationship that was allegedly interfered with and such a claim is cognizable only against a third party to the contract or business relationship.  Wilspec Technologies, Inc. v. DunAn Holding Group, Co., 204 P.3d 69, 74 (Okla. 2009).

Kibby's entire argument in opposition to summary judgment is based on statements made by Louis Kibby in a declaration attached to Kibby's response to the motion for summary judgment. Louis Kibby states that Kibby's bids for work with Williams have not been accepted following the

termination of the Spread 16 project.  Dkt. # 93-1, at 6.  Kibby claims that it was unable to pay subcontractors due to Transco's failure to pay EWRs, and subcontractors who were not paid for their work on the Spread 16 project no longer want to work for Kibby.  Id.  Louis Kibby further claims that Transco's action have damaged Kibby's credit and caused Kibby to incur $1.5 million in expenses to defend against claims by subcontractors.  Id.  Transco has submitted e-mails showing its communications with Kibby's subcontractors following Kibby's failure to fully pay invoices submitted by subcontractors. Transco received numerous requests for updates on payment from subcontractors or assistance for getting in touch with Kibby, because Kibby had not paid the subcontractor's invoices or communicated with subcontractors. Dkt. # 70-27, at 1-2.  Transco did not make disparaging statements about the quality of Kibby's work, and Transco accurately represented that a substantial amount of money had been paid to Kibby and that money should have been used to pay subcontractors.  Id. at 9, 25.  One subcontractor, Badger Daylighting Corp., was owed over $2 million by Kibby, and Louis Kibby "indicated to [Badger] that everything is in order," even though Louis Kibby knew by that time that Transco was seeking to terminate the contract.  Id. at 3.

There is no evidence that Transco interfered with Kibby's business relationships with subcontractors or that any action by Transco could be treated as malicious or wrongful under Oklahoma law.  Louis Kibby's claims concerning Kibby's failure to obtain future contracts with Williams are vague, and this does not show that Transco interfered with Kibby's future business prospects.  Instead, Kibby's failure to complete work on the Spread 16 project could reasonably have been a legitimate cause for concern to Williams when making a decision to award a large-scale construction contract and, even if some facts are disputed, Kibby did not timely complete work on

the project and Transco had to retain a new contractor to finish the work.  Louis Kibby's claim that Kibby failed to be awarded future contracts because of any statement or action taken by Transco is speculative and does not support a claim of tortious interference with business relationships.  As to subcontractors's failure to work with Kibby, it is undisputed that Transco paid Kibby over $3.2 million and that Kibby failed to use this money to fully pay its subcontractors.  Kibby's own conduct damaged its relationship with subcontractors, and Transco's communications with subcontractors do not show any wrongful or malicious attempt to harm Kibby's relationships with its subcontractors.  The Court finds that summary judgment should be entered in favor of Transco on Kibby's counterclaim of tortious interference with business relationships.

## IV.

Transco renews its motion to strike Kibby's demand for a jury trial, because evidence gathered during pretrial discovery establishes that Kibby knowingly and voluntarily waived its right to a jury trial.  Dkt. # 69.  Kibby responds that Transco is asking for reconsideration of the Court's prior opinion and order finding that the waiver of jury trial was unenforceable, and Transco has failed to come forward with evidence that it specifically advised Kibby about the waiver or that it would have been willing to negotiate about this issue.  Dkt. # 95.

The Seventh Amendment to the United States Constitution provides a right to a jury trial in many civil cases.  The right to a jury trial in federal court is governed by federal law and, as a matter of federal law, contractual agreements waiving the right to a jury trial are "neither illegal nor contrary to public policy."  Telum, Inc. v. E.F. Hutton Credit Corp., 859 F.2d 835, 837 (10th Cir. 1988).  A waiver of the right to jury trial in enforceable if the waiver knowing and voluntary.  Branta, LLC v. Newfield Prod. Co., 2017 WL 1435882, *2 (D. Colo. Apr. 24, 2017).  The Tenth Circuit has not

provided any specific factors that must be used to determine if a waiver is knowing and voluntary, but district courts have considered

> (1) whether the clause containing the waiver was conspicuous; (2) whether there was a gross disparity in bargaining power between the parties; (3) the business or professional experience of the party opposing the waiver; and (4) whether the party opposing the waiver had an opportunity to negotiate the contract terms."

Walker v. SC Realty Servs., Inc., 2016 WL 4245487 (D. Kan. Aug. 11, 2016).  These factors can be important in deciding whether a waiver of jury trial is enforceable, but the ultimate decision rests on whether "in light of all of the circumstances, the Court finds the waiver to be unconscionable, contrary to public policy, or simply unfair."  Moreno v. Qwest Corp., 2013 WL 2444720, *3 (D. Colo. June 5, 2013).  The Tenth Circuit has not decided which party has the burden to demonstrate that a waiver of jury trial was knowing and voluntary.  Hulsey v. West, 966 F.2d 579, 581 (10th Cir. 1992).

The jury trial waiver is contained Article 34 of the parties' agreement, and the full provision at issue states as follows:

### Article 34.  Applicable Law, Jurisdiction and Venue

This Contract shall be governed by, and construed in accordance with the Laws of the State of Oklahoma without regard to any of its choice of law provisions. Company and Contractor hereby submit and consent to the personal jurisdiction of Federal and State Courts located in Tulsa County, Oklahoma and irrevocably waive all objections to venue in Tulsa County.  Company and Contractor further agree that the Federal and State Courts in Tulsa County are the exclusive venue for any and all judicial proceedings between the parties in connection with this Contract and/or the performance (or non-performance) of Work.  **THE PARTIES IRREVOCABLY WAIVE THEIR RIGHT TO A JURY TRIAL.**

Dkt. # 71-1, at 33.  In a prior opinion and order, the Court declined to enforce this provision based on the limited record available at the early stage of the case.  Dkt. # 37, at 13.  The Court relied on

an affidavit of Louis Kibby in which he stated that Kibby was a "small, family owned and operated pipeline welding company," and he stated that he had no ability to negotiate any terms of the contract due to a disparity in the bargaining power.  Dkt. # 32-2, at 1.  There was no evidence in the record to support Transco's assertion that it would have been willing to negotiate terms of the form contract, and the Court noted that the placement of the jury waiver in the contract was somewhat inconspicuous.  Id.  Louis Kibby acknowledged that the he had not fully reviewed the contract before signing it, but other factors tended to show that Kibby did not knowingly and voluntarily waive its right to a jury trial.

Transco has come forward with new evidence concerning Kibby's failure to review the contract, the disparity in bargaining power, and Transco's willingness to negotiate the terms of the contract.  Transco acknowledges that the contract is lengthy at 844 pages, but the contract contains an index and the general terms governing the contract are set out in Section I of the contract.  Dkt. # 69-1.  Section I of the contract is 39 pages and it also contains an index identifying each provision, including dispute resolution and choice of law provisions.  Id.  Louis Kibby testified in his deposition that he reviewed only the scope of work provisions contained in Section II of the contract, and he admitted that he was in possession of Section I before he signed the contract.  Dkt. # 69-6, at 3-5.  Louis Kibby testified that he had never seen the jury trial waiver prior to this lawsuit but, when asked if he or anyone else at Kibby had read Section I of the contract, he stated "No, and I will guarantee nobody did." Id. at 4.  Transco has submitted the affidavit of Adam Munoz, a construction contract coordinator for Williams, who is responsible for sending contracts to contractors and negotiating or clarifying terms of the contract.  Dkt. # 69-3.  After Kibby's bid was selected for the Spread 16 project, Munoz received requests for clarifications or changes to the contract from Kibby, and all of

these clarifications or changes were included in the final version of the contract. Dkt. # 69-4; Dkt. # 69-5. Transco also sent an amended version of Section I of the contract to Kibby before the contract was executed, further clarifying the Kibby was in possession of Section I before Kibby signed the contract. Dkt. # 69-6. Transco is a subsidiary of Williams and Kibby had performed work for Williams beginning in 2012, and the prior contracts were approximately three to four pages long and contained only eight paragraphs of general terms and conditions. Dkt. # 108-1. Each of these prior contracts states that the "Parties irrevocably waive their right to a jury trial." Dkt. # 108-1, at 2, 6, 10, 14, 18, 21, 25. Transco also objects to the assertion in Louis Kibby's affidavit that Kibby is a "small, family owned and operated pipeline welding company" with no bargaining power. Kibby maintains offices in Michigan, New York, and Virginia, and Kibby had performed numerous large scale contracts for Williams in various location in the United States. Dkt. # 108-2, at 2-5.

Based on the new evidence submitted by Transco, the Court finds that the waiver of jury trial should be enforced. The Court's prior opinion and order gave undue weight to statements in Louis Kibby's affidavit that are not supported by evidence, and it was appropriate for Transco to renew its motion to enforce the jury trial waiver after having the opportunity to conduct discovery. The prior opinion and order noted that the waiver was "less than conspicuous," but this factor has become irrelevant in light of Louis Kibby's deposition testimony. Louis Kibby "guaranteed" that no one at Kibby took the time to read Section I of the contract, and Kibby would not have read the jury trial waiver no matter how conspicuous Transco made this provision of the contract. Transco has also provided evidence that many of Kibby's prior, short-form contracts with Williams contained a jury trial waiver, yet Louis Kibby claims that he had never seen a jury trial waiver before this case was filed. The Court previously faulted Kibby as "negligent in failing to fully review the contract before

executing it," but the evidence shows a repeated failure by Kibby to make any attempt to understand the general terms and provisions of its contracts with Williams and Transco.  Dkt. # 37, at 13.  Louis Kibby's affidavit also overemphasizes the disparity in bargaining power between Kibby and Transco and Transco's alleged unwillingness to negotiate terms of the contract.  The Court finds that Louis Kibby's statements as to these issues should be not be given significant weight.  There is a disparity in bargaining power between Transco and Kibby, but the evidence shows that Transco was willing to negotiate terms of the contract at the request of Kibby.  Kibby holds itself out as a sophisticated and experienced welding contractor, and it is apparent that a jury trial waiver was a standard provision in Kibby's contracts with Williams and Transco.  Kibby cannot avoid enforcement of this provision merely by citing a repeated failure to fully review its contracts, and enforcement of the jury trial waiver would not be unfair or unconscionable under the circumstances. Transco's renewed motion to strike Kibby's demand for a jury trial (Dkt. # 69) should be granted, and this case will proceed to a non-jury trial.

## V.

Transco has filed five motions in limine (Dkt. ## 83, 84, 85, 86, 87).  In light of the Court's rulings in this Opinion and Order, some of the issues raised by Transco are moot.  The Court also notes that motions in limine are often found to be unnecessary when a case is set for a non-jury trial, because the Court can exclude evidence at trial without the same risk of prejudice that is present in a jury trial.  Buhler Versatile Inc. v. GVM, Inc., 2018 WL 6062307, *5 (M.D. Pa. Nov. 20, 2018); Carroll v. United States, 2017 WL 187552, *1 (W.D. Okla. Jan. 17, 2017); Cramer v. Sabine Transp. Co., 141 F. Supp.2d 727, 733 (S.D. Tex. 2001).  However, the Court has reviewed the motions in limine and finds that it would be helpful to provide the parties guidance on some of the issue raised

22

by Transco.  The Court finds that is unnecessary to rule on Transco's motion to exclude evidence concerning alleged settlement negotiations (Dkt. # 86), and Transco's fifth motion raises issues that are no longer relevant as the case will no longer be set for a jury trial.

### Exclusion of Undisclosed Experts (Dkt. # 83)

Transco argues that Kibby failed to disclose an expert to perform a scheduling analysis based on the critical path method, and Kibby should be precluded from offering expert testimony on this issue.  Kibby responds that it does not intend to call an expert on this issue, because the critical path method is not relevant in this case.  The Court makes no finding as to the relevance of the critical path method, but finds that Transco's motion (Dkt. # 83) is moot based on Kibby's statement that it does not intend to offer expert testimony on this issue.

### Parol Evidence Concerning EWRs (Dkt. # 84)

Transco seeks to exclude parol evidence concerning Kibby's claim that Transco waived the contractual requirements applicable to the submission of EWRs, because there is no evidence that the parties formally modified the contract to waive these requirements.  Kibby responds that Transco failed to timely invoke the provision of the contract requiring a writing signed by both parties to amend the contract, and Kibby states that it intends to offer evidence that it relied on Transco's representations to Kibby that compliance with the contractual procedure for submitting EWRs was unnecessary.  The Court finds that there is a factual dispute that prevents a pretrial ruling on the admissibility of evidence concerning Transco's alleged waiver of the contractual requirements for

submitting EWRs, and the motion in limine (Dkt. # 84) is denied.[5]  However, Kibby's argument that Transco has waived the requirement that changes to the contract be reduced to a writing signed by both parties is rejected, and Transco may argue that a writing was required to amend to contractual provision related to the submission of EWRs.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Summary Judgment and Brief in Support (Dkt. ## 70, 81) is **granted in part** and **denied in part**: the motion is denied as to Transco's breach of contract claim for Kibby's alleged failure to complete the work and as to Transco's accounting claim, but the motion is granted in all other respects.

**IT IS FURTHER ORDERED** that Plaintiff Transcontinental Gas Pipe Line Company, LLC's Renewed Motion to Strike Defendant's Jury Demand and Brief in Support (Dkt. # 69) is **granted**.

**IT IS FURTHER ORDERED** that Plaintiff's First Motion in Limine (Dkt. # 83), Plaintiff's Fourth Motion in Limine (Dkt. # 86), and Plaintiff's Fifth Motion in Limine (Dkt. # 87) are **moot**, and Plaintiff's Second Motion in Limine (Dkt. # 84) and Plaintiff's Third Motion in Limine (Dkt. # 85) are **denied**.

---

[5]     Based on this ruling, the Court also finds that Transco's motion in limine (Dkt. # 85) to exclude the statements of independent contractors concerning EWRs or waiver of contractual requirements is also denied.  The motion would require the resolution of disputed facts and is not sufficiently specific for a pretrial ruling.

**IT IS FURTHER ORDERED** that the parties shall file a joint status report no later than **October 12, 2021** as to a proposed schedule for the resolution of the remaining claims and as to parties' willingness to participate in a supplemental settlement conference.

**DATED** this 27th day of September, 2021.

CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE

25